IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
May 5, 2009 Session

## STATE OF TENNESSEE v. EDGAR ALLGOOD

**Direct Appeal from the Criminal Court for Shelby County**
**No. 04-06360    Carol Wade Blackett, Judge**

**No. W2008-00870-CCA-R3-CD  - Filed February 10, 2010**

Defendant, Edgar Allgood, was indicted in count one of the indictment for possession of more than 0.5 grams of cocaine with intent to sell and in count two for possession of more than 0.5 grams of cocaine with intent to deliver.  Following a jury trial, Defendant was found not guilty of the charged offenses.  The jury found Defendant guilty in count one of the indictment of the lesser included offense of facilitation of possession of more than 0.5 grams of cocaine with intent to sell, a Class C felony, and in count two of the lesser included offense of facilitation of attempted possession of more than 0.5 grams of cocaine with intent to deliver, a Class D felony.  The trial court sentenced Defendant as a Range III, persistent offender, to concurrent sentences of twelve years for each conviction, for an effective sentence of twelve years.  On appeal, Defendant challenges the sufficiency of the convicting evidence and the trial court's sentencing determinations.  After a thorough review, we conclude as plain error that Defendant's dual convictions violate double jeopardy principles.  Accordingly, we merge Defendant's conviction of facilitation of attempted possession of cocaine with intent to deliver into his conviction of facilitation of possession of cocaine with intent to sell.  We affirm the trial court's judgment as to Defendant's conviction of facilitation of possession of cocaine with intent to sell and his sentence of twelve years.  We remand solely for the correction and entry of an appropriate judgment consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed;
Remanded for Entry of Corrected Judgment**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which J. C. MCLIN and CAMILLE R. MCMULLEN, JJ., joined.

William C. Gosnell, Memphis, Tennessee, for the appellant, Edgar Allgood.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; William L. Gibbons, District Attorney General; and Tracye Jones, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

## I. Background

Officer Eric Leppanen testified that he was a detective with the Memphis Police Department's narcotics unit in October and November 2003. At that time, an individual known as "Jay" was under investigation by the narcotics unit for possible drug trafficking from his residence at Apartment R, 1441 Jefferson Avenue. Officer Leppanen said that a chain link fence with a hole in it was located at the back of the apartment. Officer Leppanen stated that on separate occasions five people climbed through the hole in the fence and approached the residence during the surveillance period. Officer Leppanen identified Defendant at trial as the man known as "Jay," and stated that Defendant's name was later determined to be Edgar Allgood.

Officer Leppanen said that the residence was a duplex, and Defendant's unit was located in the rear of the building. Officer Leppanen, accompanied by other officers, executed a search warrant on the residence on November 7, 2003. Officer Leppanen and another officer went to the back of the unit while the other officers knocked on the front door. When no one answered the door, the police officers forced an entry into the residence. Defendant was apprehended in the bathroom. Vincent Smith was in the living room, and Jacqueline Rogers was attempting to hide beside the refrigerator in the kitchen. Officer Leppanen stated that the officers found several baggies of cocaine and crack cocaine on a glass table in the living room, two sets of scales, an opened box of baking soda, and a box of baggies in the kitchen, and several pipes which could be used to smoke either crack cocaine or marijuana. Officer Leppanen explained that baking soda was one of the ingredients used in the process of converting powder cocaine into crack cocaine. The officers also discovered two razor blades and a spoon by the stove in the kitchen. Bills totaling $900 were stacked on the glass table next to the drugs, and another $600 was recovered from the three individuals in the residence. Officer Leppanen stated that his field testing of the substances found at the residence showed that the powder cocaine weighed 6.6 grams and the crack cocaine weighed 1.1 grams. Officer Leppanen said that a cable television bill for "Apartment Rear, 1441 Jefferson Avenue" was addressed to Defendant, and several prescription bottles were found in the kitchen with Defendant's name on the containers. A utility bill for the residence was addressed to Erica D. Gonzalez.

On cross-examination, Officer Leppanen acknowledged that none of the items seized during the search were tested for fingerprints. Officer Leppanen stated that another police officer searched Defendant's person at the time of his arrest, but no drugs were found. Officer Leppanen said that he did not ascertain the identity of the title holder to the property or whether there was a lease agreement in place for the rear unit. Officer Leppanen stated that less than $100 was found on Defendant.

On redirect examination, Officer Leppanen said that prior to the execution of the search warrant, he determined that Defendant lived at the residence on Jefferson Avenue. Officer Leppanen stated that he had seen Defendant at this residence on more than one occasion, and had observed a vehicle which Defendant was known to drive parked at the residence.

Officer David Neyman, with the Barlett Police Department, testified that he participated in the search of the residence at Apartment R, 1441 Jefferson Street on November 7, 2003. Officer Neyman said that a person peeked out of the kitchen window as he and the other officers approached the residence, and someone inside the apartment yelled, "Police." Officer Neyman knocked open the front door. After entry, the police officers found Ms. Rogers in the kitchen, Mr. Smith sitting on a couch in the living room, and Defendant entering the bathroom. Defendant shut the bathroom door, and the flush of a toilet was heard. Officer Neyman stated that there was nothing found in the apartment to indicate that the unit was the residence of either Mr. Smith or Ms. Rogers.

Lieutenant Joe Massey, with the Bartlett Police Department, testified that he accompanied Officer Neyman into the residence. Officer Massey said that Defendant was trying to shut the door to the bathroom. Officer Massey forced the bathroom door open, and noted that the toilet had been flushed. Officer Massey said that the toilet was dismantled and searched, but no drugs or other contraband were found. Officer Massey stated that Defendant told the investigating officers that the cocaine in the apartment belonged to him. Defendant said that the cocaine was for his personal use, and denied that he sold cocaine. On cross-examination, Officer Massey stated that all three persons in the residence were arrested.

Special Agent Dana Parmenter testified that she was a forensic scientist with the controlled substance identification section of the Tennessee Bureau of Investigation, and a member of the agency's violent crime response team. Special Agent Parmenter stated that she received a rock-like substance and a white powdered substance from the Bartlett Police Department for analysis. Her testing revealed that the rock-like substance contained cocaine base and weighed 1.1 grams. The white powdered substance contained cocaine and weighed 5.8 grams. Special Agent Parmenter said that the difference in weights reflected in the field

tests and her report was because the police department usually weighed drugs found at the crime scene with the packaging.

## II. Sufficiency of the Evidence

Defendant argues that the evidence was insufficient to support his convictions, and the trial court erred in not entering a judgment of acquittal. Specifically, Defendant contends that the evidence does not support a finding that he knew there was cocaine in the apartment because he was not in the living room where the cocaine was located when the police officers entered the residence. Additionally, Defendant contends that the evidence failed to identify the individual whose unlawful conduct he was facilitating or that he intended to benefit from the proceeds of the offense.

When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in a light most favorable to the prosecution in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced on appeal with a presumption of guilt. State v. Black, 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). "The standard by which the trial court determines a motion for judgment of acquittal at the end of all the proof is, in essence, the same standard which applies on appeal in determining the sufficiency of the evidence after a conviction; that is, whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Thompson, 88 S.W.3d 611, 614-615 (Tenn. Crim. App. 2000) (citing State v. Gillon, 15 S.W.3d 492, 496 (Tenn. Crim. App. 1997)).

Defendant was convicted in count one of the indictment for facilitation of possession of more than 0.5 grams of cocaine with the intent to sell, and in count two for facilitation of attempted possession of more than 0.5 grams of cocaine with the intent to deliver. It is an offense to knowingly possess or attempt to possess a controlled substance with intent to

-4-

manufacture, deliver, or sell. T.C.A. §§ 39-12-101, 39-17-417(a)(4). A person commits "criminal attempt" by acting "with intent to complete a course of action or cause a result that would constitute the offense, ... and the conduct constitutes a substantial step toward the commission of the offense." T.C.A. § 39-12-101(a)(3). A conviction may be had upon either actual or constructive possession. Constructive possession is the ability to reduce an object to actual possession. State v. Brown, 823 S.W.2d 576, 579 (Tenn. Crim. App. 1991).

A person is criminally responsible for the facilitation of a felony if, knowing that another intends to commit a specific felony but without the intent required for criminal responsibility under Tennessee Code Annotated section 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony. T.C.A. § 39-11-403(a). "Therefore, the State was required to prove the commission of a specified felony and the assistance [Defendant] gave to the person committing the specified felony." State v. Dych, 227 S.W.3d 21, 40 (Tenn. Crim. App. 2006) (citing State v. Parker, 932 S.W.2d 945, 950-51 (Tenn. Crim. App. 1996)). "[A] person ... acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." T.C.A. § 39-11-302(b).

Officer Leppanen testified that he and other officers conducted a surveillance of the residence at Apartment R, 1441 Jefferson Avenue in November 2003. The subject of the surveillance was known to the officers as "Jay," and their investigation revealed that he lived at that address. Officer Leppanen identified Defendant at trial as the individual whom he knew as "Jay." Officer Leppanen stated that he had seen Defendant inside the residence during the surveillance period, and a vehicle which Defendant was known to drive was parked at the residence. During the surveillance period, five individuals approached the residence through a hole in a chain link fence at separate times, but they did not enter the home. A cable television bill addressed to Defendant at the searched premises and prescription bottles with his name on the container were found inside the residence.

When the police officers gained entry to the apartment, Mr. Smith was sitting on a couch in the living room. Several baggies of cocaine and crack cocaine were on a coffee table in the living room, and $900 was stacked next to the cocaine. An additional $600 was retrieved from Defendant, Mr. Smith, and Ms. Rogers, although Defendant had less than $100 on his person at the time of the search. Special Agent Parmenter testified that the powder cocaine weighed 5.8 grams, and the crack cocaine weighed 1.1 grams. Two sets of scales, baking soda used for transforming powder cocaine into crack cocaine, and baggies for packaging the cocaine were found in the kitchen.

Although the State did not introduce a lease agreement or other document of ownership to the property, there was sufficient evidence to support a finding by a rational

trier of fact that Defendant was more than a "mere presence" in the apartment and that he treated the apartment as his residence. See State v. Ross, 49 S.W.3d 833, 845 (Tenn. 2001) (concluding that "although a defendant's mere presence at a place where controlled substances are found will not support an inference of possession, a person in possession of the premises where controlled substances are found may also be presumed to possess the controlled substances themselves"). As for Defendant's allegation that there was no proof that he knew the cocaine was in the apartment, the cocaine and other drug paraphernalia were in plain view, and Defendant told the police officers that the cocaine was his.

With regard to a determination of an intent to sell or deliver, proof of intent usually consists of circumstantial evidence and the inferences that can be reasonably drawn from that evidence. See Hall v. State, 490 S.W.2d 495, 496 (Tenn. 1973); State v. Washington, 658 S.W.2d 144, 146 (Tenn. Crim. App. 1983) (observing that a jury may derive a person's intent from both direct and circumstantial evidence). It is permissible for the jury to "draw an inference of intent to sell or deliver when the amount of the controlled substance and other relevant facts surrounding the arrest are considered together." T.C.A. § 39-17-419.

"In the past, we have affirmed convictions where the amount of the controlled substance was greater than .5 grams and there existed physical or testimonial evidence, which allowed the jury to draw a permissible inference from the facts surrounding the arrest that the defendant had intent to sell or deliver." State v. John Fitzgerald Belew, No. W2004-01456-CCA-R3-CD, 2005 WL 885106, at *5 (Tenn. Crim. App., at Jackson, Apr. 18, 2005), no perm. to appeal filed (holding that 1.7 grams of crack cocaine, no drug paraphernalia, and 5.1 grams of baking soda, which testimony revealed was an agent used in manufacture of crack cocaine, was sufficient evidence for a jury to find an intent to deliver); see also, State v. Logan, 973 S.W.2d 279, 281 (Tenn. Crim. App. 1998) (finding evidence of a large amount of cash found in conjunction with several small bags of cocaine provided sufficient evidence of intent to sell); State v. Brown, 915 S.W.2d 3, 8 (Tenn. Crim. App. 1995) (recognizing that the absence of drug paraphernalia, and manner of packaging of drugs supported an inference of intent to sell); State v. Matthews, 805 S.W.2d 776, 782 (Tenn. Crim. App. 1990) (finding testimony of amount and street value of 30.5 grams of cocaine was admissible to infer an intention to distribute); State v. William Martin Frey, No. M2003-01996-CCA-R3CD, 2004 WL 2266799, *8 (Tenn. Crim. App. at Nashville, Oct. 6, 2004), perm. to appeal denied (Tenn. Feb. 28, 2005) (holding that testimony of 1.8 grams of cocaine, a stack of cash, and absence of drug paraphernalia constituted circumstances from which jury could reasonably infer intent to sell); State v. William F. Cartwright, No. M2003-00483-CCA-R3-CD, 2004 WL 1056064, *4 (Tenn. Crim. App. at Nashville, May 10, 2004), no perm. to appeal filed (holding testimony of large volume and street value of 25.5 grams of cocaine, typical dosages for addicts, and absence of drug paraphernalia sufficient to support inference and conviction of intent to deliver).

More recently, in State v. Nelson, 275 S.W.3d 851, 867 (Tenn. Crim. App. 2008), this Court concluded that the arresting officer's testimony that the amount of cocaine found was not consistent with personal use and that the defendant was spotted by the officer in a location known for illegal drug sales, coupled with $114 in cash and a check for an unspecified amount found on the defendant's person, presented sufficient circumstances from which the jury could reasonably infer that the defendant intended to sell the cocaine.

In the present case, the investigating officers found drug paraphernalia in the residence. Nonetheless, evidence was presented that 5.8 grams of powder cocaine and 1.1 grams of crack cocaine was discovered in the living room where Mr. Smith was sitting. The cocaine was packaged in several baggies, and $900 was stacked next to the cocaine. The investigating officers also found two sets of scales, boxes of baggies, and an opened box of baking soda in the kitchen which Officer Leppanen testified was an agent used in the conversion of powder cocaine into crack cocaine. Officer Leppanen also testified that during the surveillance of the apartment, he observed five individuals on five separate occasions climb through a hole in the chain link fence at the back of the apartment, approach the apartment, and then leave again without entering the apartment. Defendant acknowledged at trial that the cocaine belonged to him.

Based on our review, we conclude that the foregoing provides sufficient circumstantial evidence from which a jury might infer that Defendant at the least provided substantial assistance by making the apartment available for the possession of cocaine with the intent to sell and deliver. Accordingly, we conclude that the evidence was sufficient for a reasonable trier of fact to find beyond a reasonable doubt that Defendant was guilty of facilitation of possession of more than 0.5 grams of cocaine with the intent to sell and facilitation of attempted possession of more than 0.5 grams of cocaine with the intent to deliver. Defendant is not entitled to relief on this issue.

## III. Double Jeopardy Principles

Notwithstanding the sufficiency of the convicting evidence, we are constrained to consider as plain error whether Defendant's dual convictions violate double jeopardy protections. See Tenn. R. App. P. 36(b) (providing that "[w]hen necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal"). Dual convictions resulting in a violation of a defendant's protection against double jeopardy constitute "plain error." See State v. Lewis, 958 S.W.2d 736, 738 (Tenn. 1997); State v. Epps, 989 S.W.2d 742, 745 (Tenn. Crim. App. 1998) (applying plain error doctrine to review whether the defendant's dual convictions violated double jeopardy principles).

In order for us to find plain error, "(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice.'" State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)).

The record clearly establishes that Defendant was convicted of both facilitation of possession of cocaine with the intent to sell and facilitation of attempted possession of cocaine with the intent to deliver. Second, multiple convictions for the same offense breach a clear and unequivocal rule of law. Third, a fundamental constitutional right of Defendant, his Fifth Amendment right to be free from double jeopardy, is affected. Fourth, the record is devoid of any evidence that Defendant waived the issue for tactical reasons. Fifth, we conclude that consideration of a violation of Defendant's double jeopardy protections is "necessary to do substantial justice." Accordingly, we will review this issue as plain error.

We note initially that Defendant raised a double jeopardy concern during his sentencing hearing, arguing that the same facts and circumstances of the case were used to support both of his convictions. The trial court acknowledged that if Defendant had been convicted of both facilitation of possession of cocaine with the intent to sell and facilitation of possession of cocaine with the intent to deliver, then a merger of the two convictions would be required. However, the trial court apparently found significant the fact that Defendant's conviction in count two of the indictment was for a different grade of offense than the offense supporting his conviction in count one, that is a Class D, as opposed to a Class C, felony, and declined to merge the two convictions. Defendant did not raise the issue in either his motion for new trial or on appeal.

The double jeopardy clause of the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Similarly, under our Tennessee Constitution, "no person shall, for the same offense, be twice put in jeopardy of life or limb." Tenn. Const. art. 1, § 10. Three fundamental principles underlie double jeopardy: "(1) protection against a second prosecution after an acquittal; (2) protection against a second prosecution after conviction; and (3) protection against multiple punishments for the same offense." State v. Denton, 938 S.W.2d 373, 378 (Tenn. 1996) (citations omitted). The case sub judice involves the third scenario, that is, multiple punishments for the same offense.

In determining whether two offenses are the "same" for double jeopardy purposes, the Blockburger test provides that:

where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

Blockburger v. United States, 284 U.S. 299, 304, 52 S. Ct. 180, 182; State v. Black, 524 S.W.2d 913, 919 (Tenn. 1975).

In addition to the Blockburger test, the trial court must consider the "same evidence" test, that is whether the same evidence is required to prove the offenses. Denton, 938 S.W.2d at 381 (citing Duchac v. State, 505 S.W.2d 237, 239 (Tenn. 1973)). Finally, the trial court must analyze whether there were multiple victims or discrete acts and compare the purposes of the respective statutes. Denton, 938 S.W.2d at 381.

Under Blockburger, the offenses in question involve two separate subsections of Tennessee Code Annotated section 39-17-417(a). The Sentencing Commission Comments to Tennessee Code Annotated section 39-17-417 provide that, "[T]he commission wished to make it clear that each of these acts was a separate offense and therefore listed the manufacture, delivery, sale or possession with intent to manufacture, deliver or sell each as a separate subsection." However, while both convictions are valid under Blockburger, we must look to the "same evidence" test articulated in Duchac. See Thornton v. State, 10 S.W.3d 229, 239 (Tenn. 1999) (citing Denton, 938 S.W.2d at 379). This test states in pertinent part:

A defendant has been in jeopardy if on the first charge he could have been convicted of the offense charged in the second proceeding. One test of identity of offenses is whether the same evidence is required to prove them. If the same evidence is not required, then the fact that both charges relate to, and grow out of, one transaction, does not make a single offense where two are defined by the statutes.

Duchac, 505 S.W.2d at 239.

It is apparent from a review of the record that Defendant's dual convictions are based on the same facts and arise out of a single transaction, that is, the search of the residence at 1441 Jefferson Avenue. The evidence seized during the search which was presented to the jury to support Defendant's conviction of facilitation of possession of cocaine with intent to sell is the same evidence used to support Defendant's conviction of facilitation of attempted possession of cocaine with intent to deliver. See State v. Thornton, 10 S.W.3d 229, 238 (Tenn. 1999) (citing State v. Willie B. Jackson, No. 01C01-9702-CR-00054, 1998 WL

199992, at *10 (Tenn. Crim. App., at Nashville, April 23, 1998), perm. to appeal denied (Tenn. Dec. 7, 1998) (noting that "[c]learly, the law precludes convictions for both the sale and delivery of illegal drugs). The fact that the jury convicted Defendant of a different grade of offense in count two of the indictment than in count one does not alter the identity of the facts and evidence supporting his convictions in both counts. See State v. William F. Cartwright, No. M2003-00483-CCA-R3-CD, 2004 WL 1056064, at *5 (Tenn. Crim. App., at Nashville, May 10, 2004), no perm. to appeal filed (concluding that the defendant's conviction of possession of cocaine with the intent to deliver and simple possession of cocaine violated double jeopardy protections notwithstanding the fact that the simple possession conviction was a lesser included offense of the charged offense of possession of cocaine with intent to sell).

Because these convictions fail the Duchac prong of the test, we find as plain error that principles of double jeopardy bar Defendant's dual convictions. We accordingly merge Defendant's conviction of facilitation of attempted possession of more than 0.5 grams of cocaine with the intent to deliver into his conviction of facilitation of possession of more than 0.5 grams of cocaine with the intent to sell.

## IV. Sentencing Issues

At the sentencing hearing, the State relied on the presentence report which was introduced as an exhibit without objection after Defendant noted certain inaccuracies. Defendant did not offer any evidence at the sentencing hearing. According to the presentence report, Defendant was thirty-one years old at the time of the sentencing hearing. Defendant reported that he dropped out of high school in the tenth grade, is single, and has three children. Defendant listed only one employer for whom he worked from February 2006 until January 2008.

According to the presentence report, Defendant has a lengthy criminal history commencing when he was fifteen years old. As a juvenile, Defendant has adjudications of delinquency for sale of cocaine, theft of a vehicle, possession of cocaine with the intent to sell, and possession of drug paraphernalia. In 1994, Defendant was convicted as an adult in the Shelby County Criminal Court for theft of property valued between $500 and $1,000, a Class E felony, which had been committed while he was still a juvenile. In 1995, as an adult in the Shelby County Criminal Court, Defendant entered a plea of guilty to possession of a Schedule II drug, which offense was committed while Defendant was a juvenile.

Defendant has also been convicted of the following offenses: facilitation of possession of less than 0.5 grams of cocaine, a Class D felony; felony evading arrest, a Class E felony; two convictions for aggravated assault, a Class C felony; and one conviction for possession

of an unspecified amount of drugs for which Defendant was sentenced to two years. In addition, Defendant has two misdemeanor convictions for possession of drugs, three misdemeanor convictions for simple assault, two misdemeanor criminal trespass convictions, and one misdemeanor conviction for reckless driving. Defendant also has numerous convictions for traffic related offenses.

The trial court determined that Defendant was a Range III, persistent offender, for sentencing purposes. The trial court found that Defendant had a lengthy history of criminal convictions in addition to those necessary to qualify him as a persistent offender and attributed significant weight to this factor. See T.C.A. § 40-35-114(2) (2003). Based on this enhancement factor, and the presence of no mitigating factors, the trial court sentenced Defendant to concurrent sentences of twelve years for each conviction.

On appeal, Defendant argues that the length of his sentences is excessive in view of "his age, prior criminal history and potential for rehabilitation or treatment." Defendant also contends that his enhanced sentences violate constitutional principles as set forth in the United States Supreme Court case of Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004).

We note initially that in case of further review, we will consider Defendant's challenge to his sentence for facilitation of attempted possession of cocaine with intent to deliver as well as his challenge to his sentence for facilitation of possession of cocaine with intent to sell. Effective June 7, 2005, our legislature, in response to Blakely, amended several provisions of the Criminal Sentencing Reform Act. See e.g., T.C.A. § 40-35-210, Sentencing Comm'n Cmts. The amendments provided, among other things, that they be applied to defendants who committed a criminal offense on or after June 7, 2005. See id. The amendments further provided that a defendant sentenced after June 7, 2005, for offenses committed on or after July 1, 1982, may elect to be sentenced under the amended provisions of the Act by executing a waiver of ex post facto protections. See id.

In the instant case, Defendant committed the offenses on November 7, 2003, and was sentenced on March 20, 2008. The record does not contain a written waiver executed by Defendant. Thus, the 2005 amendments to the 1989 Sentencing Act do not apply to Defendant, and Defendant's sentence is governed by the provisions of the 1989 Sentencing Act.

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information

offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; and (f) any statement the defendant wishes to make in the defendant's own behalf about sentencing. T.C.A. § 40-35-210(b) (2003); State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002). To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. See State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001).

When a defendant challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review of the record with a presumption that the determinations made by the trial court are correct. T.C.A. § 40-35-401(d) (2003). This presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999). However, if the record shows that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely de novo without the presumption of correctness. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. T.C.A. § 40-35-401 (2003), Sentencing Comm'n Cmts. We will uphold the sentence imposed by the trial court if (1) the sentence complies with our sentencing statutes, and (2) the trial court's findings are adequately supported by the record. See State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001); see also T.C.A. § 40-35-210(f) (2003).

As a Range III, persistent offender, Defendant is subject to a sentence of between ten and fifteen years for his Class C felony conviction, and a sentence of between eight and twelve years for his Class D felony conviction. T.C.A. § 40-35-112(c)(3), (4) (2003). Under the applicable law, unless enhancement factors were present, the presumptive sentence to be imposed was the minimum in the range for a Class C or Class D felony, or ten years for the Class C felony conviction, and eight years for the Class D felony conviction. Id. § 40-35-210(c) (2003). The pre-2005 sentencing act provided that, procedurally, the trial court was to increase the sentence within the range as appropriate based on the existence of enhancement factors and, then, reduce the sentence as appropriate for any mitigating factors. Id. at (d), (e).

However, the Tennessee Supreme Court has concluded that for sentences imposed pursuant to Tennessee's former sentencing act, other than the fact of a prior conviction or facts admitted by the defendant, the trial court's enhancement of a defendant's sentence based on factors that had not been found by a jury beyond a reasonable doubt violated a

-12-

defendant's Sixth Amendment right to a jury trial as interpreted by the Supreme Court. State v. Gomez, 239 S.W.3d 733, 741 (Tenn. 2007) (citing Cunningham v. California, 549 U.S. 270, 127 S. Ct. 856, 860 (2007)); see also Blakely, 542 U.S. at 301; 124 S. Ct. at 2536 (quoting Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63 (2000)) ("'Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'").

As relevant in the case sub judice, a person will be sentenced as a Range III, persistent offender, if he or she has "[a]ny combination of five (5) or more prior felony convictions within the classification class or higher, or within the next two (2) lower felony classes." T.C.A. § 40-35-107(a)(1). The trial court found as an enhancement factor that Defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. Id. § 40-35-114(2). The trial court found that Defendant had "been in and out of the Criminal Justice System" since he was fifteen years old. The trial court found particularly disturbing the fact that despite his numerous convictions, Defendant continued to commit criminal offenses. The trial court found no applicable mitigating factors and sentenced Defendant to twelve years for each conviction.

We conclude that the trial court's consideration of Defendant's prior convictions beyond those necessary to determine his sentencing range in determining the length of his sentences does not violate Blakely and was entitled to sufficient weight to justify enhancement of Defendant's sentences. Defendant is not entitled to relief on this issue. However, in view of the foregoing analysis, the merger of Defendant's conviction of facilitation of attempted possession with intent to deliver into his conviction of facilitation of possession with intent to sell under double jeopardy principles results in the imposition of only one sentence of twelve years for his Class C felony conviction.

## CONCLUSION

After a thorough review, we affirm the trial court's judgment as to Defendant's conviction of facilitation of possession of cocaine with intent to sell. We conclude, as plain error, that Defendant's conviction of facilitation of attempted possession of cocaine with intent to deliver violates double jeopardy principles, and Defendant's conviction for this offense is merged into his conviction of facilitation of possession of cocaine with intent to sell. We remand solely for the correction and entry of an appropriate judgment consistent with this opinion.

_____
THOMAS T. WOODALL, JUDGE